Mike M. Arias, Esq. (SBN 115385)
Arnold C. Wang, Esq. (SBN 204431)
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile:  (310) 861-0168

Steven D. Liddle, Esq.*
Laura L. Sheets*
Albert J. Ascuitto, Esq.*
**LIDDLE & DUBIN, P.C.**
*Pro Hac Vice* Applications to be submitted
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Facsimile:  (313) 392-0025

Attorneys for Plaintiffs
and the Putative Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PERLMUTTER, and RHIANNON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LEHIGH HANSON, INC. and DOES 1-20, <br><br> Defendant. | CASE NO. <br><br> **CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

**CLASS ACTION COMPLAINT**

# I.
# INTRODUCTION

1. Plaintiffs, MICHAEL PERLMUTTER and RHIANNON, and a putative class of their neighbors, bring this class action against Defendant LEHIGH HANSON, INC. ("Defendant") for its release of noxious odors onto Plaintiffs' property.

2. Defendant operates the Berkeley Asphalt industrial facility located at 699 Virginia St., Berkeley, CA 94710, which produces hot mix asphalt and other construction materials (the "Facility").

3. Defendant's Facility releases noxious off-site odors onto Plaintiffs' properties causing damages through nuisance, negligence, and gross negligence.

# II.
# PARTIES

4. At all times relevant hereto, Plaintiff Michael Perlmutter has resided at 1812 9th St., Berkeley, CA 94710. Plaintiff Perlmutter is a citizen of California.

5. At all times relevant hereto, Plaintiff Rhiannon has resided at 731 Virginia St., Berkeley, CA 94710. Plaintiff Rhiannon is a citizen of California.

6. Defendant Lehigh Hanson, Inc. is a foreign business corporation incorporated under the laws of Delaware, with its principal place of business located at 300 E. John Carpenter Freeway, Irving, Texas 75062. Defendant Lehigh Hanson, Inc. may be served with process through its registered agent, Corporation Service Company, at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

7. Defendant, including its predecessors and agents, either constructed or directed the construction of the Facility and exercised control and ownership over the Facility at all relevant times hereto.

8. Upon information and belief, Defendant and its agents have, at all times relevant hereto, operated and maintained the Berkeley Asphalt Facility located at 699 Virginia St., Berkeley, CA 94710.

### III.
### JURISDICTION AND VENUE

9. Plaintiffs are citizens of California, and Defendant is a citizen of both Delaware, where Defendant is incorporated, and Texas, where corporate officers direct, control, and coordinate Defendant's activities.

10. This Court has Class Action Fairness Act (CAFA) jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a). CAFA Jurisdiction is appropriate because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11. Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiff's claims took place in this District, and because much of the property that is the subject of this action is situated in this District.

12. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

### IV.
### GENERAL ALLEGATIONS

13. Defendant owns and operates a hot mix asphalt batch plant located at 699 Virginia St., Berkeley, CA 94710 (the "Facility") where it produces hot mix asphalt and other construction materials. Through Defendant's production and manufacturing processes, Defendant unnecessarily emits noxious odors into the nearby residential community.

14. Hot mix asphalt production typically involves mixing limestone, recycled asphalt pavement and asphalt cement, a petroleum-based liquid. To mix these components, limestone

and recycled asphalt are transported to a rotating drum which heats the ingredients before adding the asphalt cement. After additional mixing, the asphalt mix is usually conveyed and stored in storage silos. Trucks often drive under the silos where the asphalt is loaded by force of gravity into the truck for transportation to job sites.

15. The raw materials utilized in, and the subsequent materials and waste products created through Defendant's industrial processes are noxious and highly odiferous. However, hot mix asphalt batch plants like Defendant's Facility are not inherently a nuisance. Rather, asphalt producers like Defendant are under a duty to take odor and fume emission control, mitigation, and capture techniques in order to prevent noxious emissions from invading off-site properties.

16. Due to Defendant's inadequate efforts to prevent Facility emissions from escaping into the adjacent residential neighborhood, on frequent, recurrent, and continuing occasions too numerous to list herein, Plaintiffs' property has been and continues to be physically invaded by noxious odors.

17. The noxious odors which entered Plaintiffs' property originated from Defendant's Facility.

18. The noxious odor emissions caused by Defendant's Facility have been and continue to be dispersed across all public and private land in the proposed class area.

19. Defendant's Facility and its noxious odor emissions have been the subject of frequent complaints from residents in the nearby residential area.

20. More than 7,000 residential households are located within one mile of the Facility.

21. Numerous households within the proposed Class Area have contacted Plaintiff's counsel documenting the noxious odors they attribute to the Defendant's Facility.

**CLASS ACTION COMPLAINT**

22. Below is a small sampling of the factual allegations made by putative class members to Plaintiff's counsel, demonstrating that the Facility is the source and cause of the odor emissions, which have caused damages to neighboring properties:

  a. On February 1, 2021, putative class member Lara Buluc reported, "[o]n days when the odors are strong, I don't want to be outside with my children (ages 1 and 4) for extended periods. I also cut my walks short or close windows, reducing ventilation and fresh air in our home."

  b. On February 2, 2021, putative class member Lashonda Hill reported that due the odors from Defendant's Facility "stopped me and my son from being able to play outside. The smell is so strong it comes through the windows and fills up the house. The smell is so bad."

  c. On February 5, 2021, putative class member Carolyn Wey reported due to the "offensive odors to visitors" that emanate from Defendant's Facility, they were "not having many people over because of the smell."

  d. On March 5, 2021, Tatiana Mendoza reported, "…we have to keep the windows closed with the air purifier constantly going in our home."

23. Defendant's well documented pattern of failing to control its emissions is demonstrated by:

  a. The Bay Area Air Quality Management District ("BAAQMD"), a state regulatory authority responsible for improving the air quality of the region, received more than 200 complaints between October and December of 2020 alone from local residents regarding "intense episodes of sulfurous air pollution" emanating from Defendant's Facility.

  b. The BAAQMD has issued multiple Notices of Violations ("NOV") to Defendant's Facility for odor nuisance and Facility violations. These violations include, but are not limited to:

    i. On December 8, 2020, the BAAQMD issued Defendant an NOV under Code 1 Section 301 Health and Safety Code 41700 for constituting a Public Nuisance.

    ii. On December 21, 2020, the BAAQMD issued Defendant an NOV under Code 1 Section 301 Health and Safety Code 41700 for constituting a Public Nuisance.

    iii. On January 11, 2021, Defendant received an NOV for failing to have "enclosed the asphalt truck loading area," a violation of "revised condition of approval 8.1 of Use Permit #98-70000018/Modification of

        Use Permit #3033." As a result, community members were subject to "frequent noxious odors."

        iv. On January 14, 2021, Defendant was issued an NOV for failing to vacuum sweep "the entire paved area of the plant from fenceline to fenceline in violation of condition of approval 21.1 of Use Permit #98-70000018/Modification of Use Permit #3033."

    c. As a result of Defendant's emission of noxious odors, there have been several neighborhood protests, as well as significant media attention addressing Defendant's emissions.

24. Defendants have failed to adequately collect, capture, and destroy emissions produced by the production or storage of hot asphalt and related products, components, or byproducts used in or created by their production processes and has otherwise failed to prevent odors from the Facility from invading the homes and property of Plaintiffs and the Class.

25. A properly designed, operated, maintained, and managed asphalt production Facility like Defendant's will collect, capture, mitigate, and destroy odorous compounds in order to prevent noxious emissions from invading the surrounding community.

26. Defendant is required to control its noxious odor emissions by, among other things, operating and maintaining the Facility in a manner that adequately captures, controls, and mitigates odor emissions so as to prevent them from escaping into the ambient air surrounding the Facility and implementing other reasonably available odor mitigation, elimination, and control systems at the Facility.

27. Defendant failed to install and maintain adequate technology to properly control its emissions of noxious odors, including but not limited to the following:

    a. Failing to have "enclosed the asphalt truck loading area," a violation of "revised condition of approval 8.1 of Use Permit #98-70000018/Modification of Use Permit #3033." As a result, community members were subject to "frequent noxious odors."

    b. Failing to vacuum sweep "the entire paved area of the plant from fenceline to fenceline in violation of condition of approval 21.1 of Use Permit #98-70000018/Modification of Use Permit #3033."

    c. Failing to utilize reasonably available odor control, capture, and mitigation strategies and technologies in violation of Code 1 Section 301 Health and Safety Code 41700, constituting a Public Nuisance.

28. Defendant's Facility has emitted, and continues to emit, noxious odors that are detectable outside the bounds of its property.

29. The Facility has emitted noxious odors that have caused negative impacts to its neighbors throughout the proposed Class Area.

30. Defendant's Facility and its noxious odor emissions have been the subject of frequent complaints from residents in the nearby residential area.

31. Numerous households within the proposed Class Area have contacted Plaintiff's counsel documenting the noxious odors they attribute to the Defendant's Facility.

32. Plaintiff Michael Perlmutter reported, "The odors are unpleasant and do not seem healthy. The odors have caused my family to retreat inside and close up windows and doors rather to be outside in our backyard and garden or even in our neighborhood. The odors have driven us to recreate in other parks further away, rather than the park a block away from our house. The odors caused more stress and limited outdoor access during the COVID-19 pandemic, a time when other recreational options were limited. Continuation of these odors could detract from property values in our neighborhood."

33. Plaintiff Rhiannon reported, "About 10 years ago I put a raised bed garden in my backyard, filled with fresh compost. Within 3 years everything that I grew tasted like metal. There's a thick layer of gray/black dust covering every plant, every leaf in my yard. This dust causes me to itch like crazy, so I don't go into my backyard anymore. I can't even sit on my front stairs without scrubbing them down first. The dust is on every surface. I bought a purpleair

CLASS ACTION COMPLAINT

particulate monitor to see when it might be safe to open my windows, and the spikes seem to coincide with the plant production; but not all of the odors come with particulate, so I just don't open the windows anymore. Even before the pandemic, before my lung disease diagnosis, I was isolated in my house by the fumes from Berkeley Asphalt."

34. Numerous residents have contacted Plaintiffs' counsel. Below is a small sampling of the factual allegations made by putative class members to Plaintiff's counsel, demonstrating that the Facility is the source and cause of the odor emissions, which have caused damages to neighboring properties:

- Resident John Wollman reported that it is "so strong a smell that we stay indoors until the odors dissipate.

- Resident Carolyn Sharp noted that the "odor is nauseating, making it difficult to function when all you want to do it vomit. I've complained to Berkley Environmental Health but as of yet haven't seen any results."

- Resident Cory Larson reported: "In the morning time (really early) there is a lot of exhaust. During that time I try not to be outside, especially when the exhaust is blowing my way. I get a lot of dust and grim on the trucks constantly from the plant as well."

- Resident Carolyn Wey noted: "offensive odors to visitors, not having many people over because of the smell. Not very enjoyable."

- Lashonda Hill reported that the "smell caused headached and stopped me and my son from being able to play outside. The smell is so strong it comes through the windows and fills up the house. The smell is so bad."

35. The noxious odors emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage.

36. The invasion of Plaintiff's property and that of the Class by noxious odor emissions has reduced the value of that property and has interfered with the use and enjoyment of that property, resulting in damages.

37. The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, construction, retail trade, ministry, education, dining, and lodging.

38. Plaintiffs and the Class are a limited subset of individuals in Alameda County, and the Class Area, that includes only owner/occupants and renters of residential property who live within the proposed Class Area and fit within the Class Definition.

39. Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class area have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

40. Defendants intentionally, recklessly, willfully, grossly and/or negligently failed to properly maintain, operate, and/or construct the Facility, and caused the invasion of Plaintiffs' property by noxious odors on intermittent and reoccurring dates too numerous to individually recount.

41. Defendants' harmful, odorous emissions are continuing; Defendants have failed to cease the noxious emissions, despite the emissions being abatable with reasonable care and diligence.

42. The invasion of Plaintiff's property and that of the Class by noxious odors has reduced the value of those properties and has interfered with the use and enjoyment of those properties, resulting in damages well in excess of $5,000,000.

CLASS ACTION COMPLAINT

## V.

## CLASS ALLEGATIONS

**A.     Definition of the Class**

43.     Plaintiffs brings this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seeks to represent a Class of persons preliminarily defined as:

**All owner/occupants and renters of residential property residing within one (1) mile of the Facility's property boundary between the date three (3) years predating the filing of this Complaint and the present.**

44.     The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

45.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23 of the Federal Rule of Civil Procedure in that:

   a.   The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

   b.   There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

   c.   Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

   d.   The claims of the representative parties are typical of the claims of the Class;

   e.   A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

**CLASS ACTION COMPLAINT**

  f. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

  g. There are no unusual difficulties foreseen in the management of this class action; and

  h. Plaintiffs, whose claim is typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

### B. Numerosity

46. The approximate number of residential households within the Class Area is over 7,000.

47. The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

### C. Commonality

48. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

  a. Whether and how Defendant negligently and knowingly failed to reasonably construct, maintain, and operate the Facility to prevent off-site odor emissions;

  b. Whether Defendant owed any duties to Plaintiffs;

  c. Which duties Defendant owed to Plaintiffs;

  d. Which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, operation, and maintenance of its Facility;

  e. Whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

  f. Whether it was reasonably foreseeable that Defendant's failure to properly construct, operate, and maintain the Facility would result in an invasion of Plaintiffs' property interests;

  g. Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference; and

  h. The proper measure of damages incurred by Plaintiffs and the Class.

### D. **Typicality**

49. Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

50. The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly construction, operate, and maintain the Facility and its operations.

51. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors, causing damage to their property.

### E. **Adequacy of Representation**

52. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiffs as representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

53. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiffs' Counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

### F. **Class Treatment Is the Superior Method of Adjudication**

54. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

**CLASS ACTION COMPLAINT**

b.  Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

c.  The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

d.  The proposed class action is manageable.

55. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

56. Notice can be provided to members of the Class by U.S. Mail and/or publication.

57. Class treatment of Plaintiffs' claims is appropriate and necessary.

## VI.
## CAUSES OF ACTION ONE AND TWO
## PUBLIC AND PRIVATE NUISANCE

58. Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

59. The noxious odors which entered Plaintiff's property originated from the Facility constructed, maintained and/or operated by Defendant.

60. The noxious emissions were created as a result of intentional and affirmative acts taken by the Defendant on the offending property.

61. The odors invading Plaintiff's property are indecent and/or offensive to the senses, and obstruct the free use of their property so as to interfere with the comfortable enjoyment of life and/or property, including in but not limited to the following ways:

   a. causing Plaintiffs to remain inside their homes and forego use of their yards;
   b. causing Plaintiffs to keep doors and windows closed when weather conditions otherwise would not so require; and
   c. causing Plaintiffs annoyance, discomfort, embarrassment, and reluctance to invite guests to their homes.

62. Defendant owed and continues to owe a duty to Plaintiffs and the putative class to take positive action to prevent and/or abate the interference with common public rights and/or the invasion of the private interests of the Plaintiffs.

63. By constructing and then failing to reasonably repair, maintain, and/or operate its Facility, Defendant has negligently created an unreasonable risk of foreseeable harm by causing the invasion of Plaintiffs' properties by noxious odors and pollutants.

64. As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered injuries and damages to their properties, including through interference with the use and enjoyment of private property, loss of property values, and diminution of property values.

65. The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, construction, retail trade, ministry, education, dining, and lodging.

66. Plaintiffs and the Class are a limited subset of individuals in Alameda County, and the Class Area, that includes only owner/occupants and renters of residential property who live within the proposed Class Area and fit within the Class Definition.

**CLASS ACTION COMPLAINT**

67. Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class area have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

68. The injuries and damages suffered by Plaintiffs are specially injurious to them given the impact to their properties, as compared with the general public impacted by the odors, whose injuries do not include private property damage.

69. Plaintiffs did not consent for noxious odors to enter into their land and property.

70. The nuisance conditions created by Defendant are abatable with reasonable care and diligence.

71. The nuisance conditions created by Defendant are continuing.

72. By causing noxious odors produced and controlled by Defendant's Facility to physically invade Plaintiff's land and property, Defendant intentionally, recklessly, and/or negligently created a nuisance which substantially and unreasonably interfered with Plaintiffs' comfortable use and enjoyment of their property and caused the value of said property to diminish.

73. Whatever social utility Defendant's operations provide is clearly outweighed by the harm suffered by the Plaintiff and the putative class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

74. Defendant's substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property and diminution of property values constitutes a nuisance for

**CLASS ACTION COMPLAINT**

which Defendant is liable to Plaintiff for all damages arising from such nuisance, including compensatory, exemplary, injunctive and punitive relief since Defendant's actions were, and continue to be, intentional, willful, malicious and made with a conscious disregard for the rights of Plaintiff, entitling Plaintiff to compensatory and punitive damages.

## VII.
## CAUSES OF ACTION III AND IV
## NEGLIGENCE AND GROSS NEGLIGENCE

75. Plaintiffs restate the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

76. On occasions too numerous to mention, Defendant negligently and improperly constructed, maintained and/or operated its Facility, allowing excessive fugitive emissions to escape.

77. Defendant owed and continues to owe a duty to Plaintiffs and the putative class, as neighboring residents with private property interests, to prevent and abate the interference with, and the invasion of, their private property interests.

78. By failing to properly construct, maintain and/or operate its Facility, and follow proper hot mix asphalt batch production practices, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors would not invade and damage Plaintiffs' property.

79. As a direct and proximate result of Defendants' negligence and/or gross negligence in constructing, maintaining and/or operating the Facility, Plaintiffs' properties were physically invaded by noxious odors on occasions too numerous to list individually.

80. As a further direct and proximate result of the foregoing conduct of Defendants, Plaintiffs suffered damages to their property as alleged herein. Such damages include, but

are not limited to, diminution in the value of Plaintiffs' property, loss of property value, and the interference with the right of use and enjoyment of Plaintiffs' properties.

81. By failing to construct, maintain and/or operate its Facility, Defendant has caused the invasion of Plaintiffs' property by noxious odors.

82. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, maintained and/or operated its Facility and knew, or should have known upon reasonable inspection that such actions would cause Plaintiffs' properties to be invaded by noxious odors.

83. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' residences have been and continue to be physically invaded by noxious odors.

84. Defendant's conduct in causing noxious odors to invade Plaintiffs' property has caused damages to Plaintiffs' property, including unreasonable interference with ordinary use and enjoyment and diminution in value of said properties.

85. Defendant's conduct in knowingly allowing conditions to exist, which caused noxious odors to physically invade Plaintiffs' property, constitutes gross negligence as it demonstrates an extreme lack of concern for whether an injury resulted to Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiffs as representative of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of Plaintiffs and the Class Members and against Defendant;

**CLASS ACTION COMPLAINT**

D. An Order holding that entrance of the aforementioned noxious odors upon Plaintiffs' property constituted a nuisance;

E. An Order holding that Defendant was negligent in causing property damages to Plaintiffs and the Class, causing damages to property;

F. An award, to Plaintiffs and the Class, of compensatory and punitive damages, including pre-judgment and post-judgment interest thereupon;

G. An award to Plaintiffs and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations;

H. An award of attorney fees and costs; and

I. Such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues raised in this Complaint.

Dated: April 8, 2021

**ARIAS SANGUINETTI WANG & TORRIJOS LLP**

By: *s/Mike Arias*
MIKE M. ARIAS
ARNOLD C. WANG
ALFREDO TORRIJOS

**LIDDLE & DUBIN, P.C.**

STEVEN D. LIDDLE
LAURA L. SHEETS
ALBERT J. ASCUITTO

Attorneys for Plaintiffs and the Putative Class

**CLASS ACTION COMPLAINT**